**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Elizabeth Geraldine Ramirez, | No. CV-21-01736-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Ramirez's Application for Social Security Disability Insurance ("SSDI") benefits by the Social Security Administration ("SSA") under the Social Security Act. Plaintiff filed a Complaint (Doc. 1), and an Opening Brief (Doc. 16), seeking judicial review of that denial. Defendant SSA Commissioner ("Commissioner") filed an Answering Brief (Doc. 19), to which Plaintiff replied (Doc. 20). The Court has reviewed the parties' briefs, the Administrative Record (Doc. 13), and the Administrative Law Judge's ("ALJ") decision (Doc. 13-3 at 16–35) and will affirm the ALJ's decision for the following reasons.

**I.   BACKGROUND**

Plaintiff filed an Application for SSDI benefits in March 2019, alleging a disability beginning in January 2018. (Doc. 13-3 at 16.) Plaintiff's claim was initially denied in August 2019. (*Id.*) A telephone hearing was held before ALJ Matthew C. Dawson on December 15, 2020. (*Id.*) After considering the medical evidence and opinions, the ALJ determined that Plaintiff suffered from severe impairments including: obesity;

osteoarthritis of the knees; osteoarthritis of the foot; osteoarthritis of left hand; carpal tunnel syndrome; peripheral neuropathy; degenerative disc disease/spondylosis; personality disorder; attention deficit hyperactivity disorder; anxiety; and major depressive disorder. (*Id.* at 19.) However, the ALJ concluded that despite these impairments, Plaintiff had the residual functional capacity ("RFC") to perform light work with the following limitations: (1) she can occasionally balance, stoop, kneel, crouch, crawl, climb ramps and stairs; (2) can never climb ladders, ropes, or scaffolds; (3) can tolerate frequent exposure to unprotected heights and moving mechanical parts; (4) can understand, remember, and carry out simple instructions; (5) can tolerate frequent interactions with supervisors, coworkers, and the general public; and (6) can frequently reach, handle, finger, and feel. (*Id.* at 22–23.) Consequently, Plaintiff's Application was again denied by the ALJ on March 31, 2021. (*Id.* at 35.) Thereafter, the Appeals Council denied Plaintiff's Request for Review of the ALJ's decision—making it the Commissioner's final decision—this appeal followed. (Doc. 16 at 2.)

## II.   LEGAL STANDARDS

An ALJ's factual findings "shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

## III.   DISCUSSION

Plaintiff argues the ALJ committed harmful error in evaluating Plaintiff's symptom

testimony and in weighing the medical opinion evidence. (Doc. 16 at 1–2.) The Commissioner argues the ALJ's opinion is supported by the record and free of harmful error. (Doc. 19 at 8, 14.) The Court has reviewed the medical and administrative records and agrees with the Commissioner for the following reasons.

**A.  Plaintiff's Symptom Testimony**

An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment that "could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)) (internal quotation marks omitted). Second, absent evidence of malingering, an ALJ may only discount a claimant's allegations for reasons that are "specific, clear and convincing" and supported by substantial evidence. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012).

"[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). General findings are insufficient. *Id.* "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). "[T]he ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." *Molina*, 674 F.3d at 1112. For instance, the ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1040).

Here, Plaintiff argues the ALJ committed harmful error by rejecting Plaintiff's symptom testimony without substantial evidence. (Doc. 16 at 1–2.) The Court finds the ALJ did not err in evaluating Plaintiff's symptom testimony.

Plaintiff first argues that the ALJ failed to articulate and cite inconsistent record

evidence when rejecting Plaintiff's testimony on the severity of her conditions and ability to work. However, ALJs need not "perform a line-by-line exegesis of the claimant's testimony, nor [must the ALJ] draft dissertations when denying benefits." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). Plaintiff also asserts the ALJ summarized the medical findings but failed to connect specific inconsistencies with Plaintiff's mental health symptom testimony. This is not the case. As the Commissioner notes, the ALJ acknowledged Plaintiff's new patient evaluation from June 2018, which reflected symptoms such as a depressed mood, labile affect, reported auditory and visual hallucinations, poor insight and judgment, but thought content within normal limits. (Doc. 19 at 10.)

However, The ALJ also cites to Plaintiff's February 2019 medical records documenting unremarkable mental status findings. Plaintiff was described as cooperative, logical, having perception within normal limits, and having mild impairment in reasonable decision making—although she was still reporting tactile hallucinations and memory problems. (*Id.*) In February, May, and June 2019, Plaintiff's mood was documented as euthymic. (*Id.*) The ALJ noted Plaintiff's July 2019 mental examination status was generally normal because despite an anxious mood, Plaintiff had a full affect, clear speech, insight, judgment, cognition within normal limits, logical thought process, and no reported or evidenced hallucinations. (*Id.*) Similar reports from October 2019 also detail unremarkable mental status findings. (*Id.*) Furthermore, the ALJ notes that from January through November 2020, Plaintiff's mental status findings were generally normal with a euthymic mood, logical thinking, insight, judgment, cognition in normal limits, and no reported or evidenced hallucinations. (*Id.*) Lastly, the ALJ noted that Plaintiff reported her mood was stable and remained stable with medication management and counseling. (*Id.*)

For these reasons, the Court finds the ALJ's rejection of the severity of Plaintiff's mental health symptom testimony is supported by and consistent with the objective medical evidence. *See* 20 C.F.R. §§ 404.1529(c)(2)–(3), 416.929(c)(2)–(3); *see also* 20 C.F.R.

§§ 404.1529(a), 416.929(a) ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled").

### B. Evaluation of Medical Testimony

Claims, such as Plaintiff's, that are filed on or after March 27, 2017, are subject to amended regulations for evaluating medical evidence. *See* Revisions to Rules Regarding Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017) (codified at 20 C.F.R. pts. 404 & 416). Plaintiff filed her claim in August 2017. Applying these new regulations, the Ninth Circuit held that an ALJ "must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how it considered the supportability and consistency factors' in reaching these findings." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (cleaned up) (citing 20 C.F.R. § 404.1520c(b)(2)).

Plaintiff argues the ALJ committed materially harmful error by rejecting the assessments from Taylor Webb, PA-C without an explanation supported by substantial evidence or considering the supportability and consistency factors under the agency's regulations. (Doc. 16 at 1.) "[A]n ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Woods*, 32 F.4th at 787.

First, Plaintiff argues the ALJ rejected PA-C Webb's testimony because the ALJ believed PA-C Webb's psychiatric assessments were "outside the scope" of her expertise as a general practitioner and inconsistent with the overall record. (Doc. 16 at 15.) Plaintiff cites cases to show that an ALJ may consider physicians' specialties but not reject their opinions solely on that basis. *See Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1036 n.1 (9th Cir. 2003); *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). Plaintiff argues PA-C Webb, her years' long primary care provider, was best suited to assess Plaintiff's overall functionality. (Doc. 16 at 15–16.) The Commissioner counters that the ALJ did not reject PA-C Webb's testimony *solely* because she did not specialize in psychiatric care, but additionally because her opinion was unsupported by the record.

(Doc. 19 at 17.) The Court agrees with the Commissioner, and notes Plaintiff also acknowledges this fact. (*See* Doc. 15 at 16.) The revised regulations allow ALJs to consider the purpose of the treating relationship as a factor when determining an opinion's persuasiveness—as the ALJ did here. (Doc. 19 at 17); *see* 20 C.F.R. §§ 404.1520c(c)(3)(iii), 416.920c(c)(3)(iii) ("The purpose for treatment you received from the medical source may help demonstrate the level of knowledge the medical source has of your impairment(s)."). Therefore, Plaintiff's arguments contrary to the new regulations are moot. Because the ALJ considered the purpose of PA-C Webb's treating relationship with Plaintiff as a factor—but not the exclusive factor—in rejecting her testimony, the Court finds the ALJ did not err to this point.

Additionally, Plaintiff argues the ALJ erred by relying on physical assessment inconsistencies to reject PA-C Webb's mental assessments. (Doc. 16 at 16.) However, the Court finds that the ALJ's citation to inconsistencies with Plaintiff's assistive device use or gait were justified because PA-C Webb explicitly noted in her 2019 assessment that Plaintiff "[u]ses cane for ambulation, [and has an] antalgic gait." (Doc. 19 at 18.)

Furthermore, Plaintiff takes issue with the ALJ rejecting PA-C Webb's assessments by comparing them to Dr. House's opinion. Plaintiff argues Dr. House did not review all of Plaintiff's medical history in making his assessment. (Doc. 16 at 16.) The Commissioner argues the ALJ properly found that Dr. House's opinion was inconsistent with PA-C Webb's, because Dr. House determined Plaintiff could carry out simple instructions and that her work history suggested a capability of maintaining attention and concentration. (Doc. 19 at 18.) The Court agrees this inconsistency exists, and therefore the ALJ relied on substantial evidence, regardless of whether Plaintiff agrees with Dr. House's assessment.

Plaintiff then argues the ALJ erroneously relied on the Pain Center of Arizona's February 2020 examination, claiming it was a physical exam, so any absence of mental status findings cannot be evidence. The Commissioner argues the Pain Center of Arizona's records document Plaintiff having no depression, anxiety, or agitation during the exam,

and the notations are made under a section titled "Mental Status Exam." (*See* Doc. 13-15 at 62.) The Court finds this is clearly labeled mental status evidence and the ALJ properly cited to mental status inconsistencies to reject PA-C Webb's assessments.

Moreover, Plaintiff challenges the ALJ's finding that PA-C Webb's assessments were inconsistent with the record as a whole. The Court agrees with the Commissioner's record citations that demonstrate several unremarkable mental status findings of euthymic mood, logical thinking, no reported or evidenced hallucinations, normal insight and judgment, cognition within normal limits, and Plaintiff reporting her symptoms were controlled and stable with treatment. (Doc. 19 at 18.) For these reasons, the Court finds the ALJ relied on substantial evidence when rejecting PA-C Webb's assessments. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

Finally, Plaintiff argues the ALJ failed to properly apply the consistency and supportability factors when relying on Dr. House's opinion and prior administrative medical findings.[1] Under supportability, an ALJ examines the relevant objective medical evidence and supporting explanations from the source. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). For consistency an ALJ examines the evidence from other medical and nonmedical sources. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

Regarding Dr. House, the Commissioner argues that his examination determined: (1) Plaintiff could carry out simple instructions; (2) her past work history suggested an ability to maintain attention and concentration; (3) he was not aware of any psychological reason Plaintiff could not maintain regular attendance at a job; (4) he did not believe Plaintiff was well suited for jobs emphasizing interpersonal skills, but that she could do

---

[1] As the ALJ noted, Plaintiff previously filed Title II and Title XVI applications on December 30, 2014, and an ALJ issued a decision on January 17, 2018 finding Plaintiff not disabled from June 1, 2010 through the date of the decision. (Doc. 13-3 at 16). Plaintiff did not appeal that decision. (*Id.*) The ALJ also noted that "this case involves a subsequent disability claims with an unadjudicated period arising under the same titles of the Act as the prior claims, the undersigned must consider the res judicata effect of the prior decision." (*Id.*)

other jobs assuming she was physically capable; and (5) Plaintiff did not display significant problems with grooming or hygiene. (Doc. 19 at 19.)

As the Commissioner notes, the ALJ conducted a thorough analysis of prior administrative findings (*see* Doc. 13-3 at 30) and found them consistent with the overall evidence. (Doc. 19 at 20.) Particularly, the prior administrative medical findings were consistent with Dr. House's assessment that Plaintiff could carry out simple instructions and that her work history suggested abilities to maintain attention and concentration. (*Id.*) Furthermore, the ALJ noted that the prior administrative medical findings aligned with Dr. House and the Pain Center of Arizona's records noting no depression, anxiety, or agitation upon examination, and mental health records from 2020 documenting normal mental status examinations. (*Id.*) Moreover, the ALJ found that Dr. House's opinion was consistent with the overall record, which evidenced that Plaintiff's symptoms were controlled with medication. (*Id.*)

For these reasons, Court finds that the ALJ properly articulated consistency and supportability factors of Dr. House, the Pain Center of Arizona, and the prior administrative records when rejecting PA-C Webb's medical assessments. *See* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The Court also notes that under the new regulations, no deference is given to any medical opinion or prior administrative finding, and therefore finds the ALJ was correct in assessing each opinion on equal footing. *See* C.F.R. §§ 404.1520c(a), 416.920c(a). As such, the ALJ did not err in his evaluation of Plaintiff's medical testimony.

**IV.    CONCLUSION**

Therefore,

**IT IS ORDERED** affirming the March 31, 2021 decision of the ALJ, as upheld by the Appeals Council.

///

///

///

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 22nd day of March, 2023.

_____
Honorable Susan M. Brnovich
United States District Judge